## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**YONATTA CRISPIN TAVERAS,**

*Plaintiff,*

**07-cv-02017-JAF**

-against-

**THE MUNICIPALITY OF CAROLINA, JOSE C. APONTE DALMAU,** as Mayor of the Municipality of Carolina, Puerto Rico; **COLONEL CARLOS HADDOCK,** Individually and in his capacity as Commissioner of the Municipality of Carolina Police Department; **CAPTAIN RUBEN MOYENO** individually and as Director of the **SPECIAL RESERVE UNIT**, of the Carolina, Puerto Rico Police Department; **LIEUTENANT JOHN CRUZ GONZALEZ**, Badge Number 4-029, of the Carolina, Puerto Rico Police Department ; **SARGEANT LUIS DIAZ RUIZ**, Badge Number 4-395, of the Carolina, Puerto Rico Police Department ; **KARIMAR PERAZA SALGADO**, Badge Number 119, of the Carolina, Puerto Rico Police Department;   **ABC Police Organization**, said name being an unknown and fictitious name of the Association of Police Officers in the Municipality of Carolina, Puerto Rico; **VANESSA CARMONA; Badge Number 30879,** of the Commonwealth of Puerto Rico Police Department; **ALFREDO RIVERA SUAREZ, Badge Number 21912** of the Commonwealth of Puerto Rico Police Department; **JOHN DOES #1-5** individually and/or in their capacities as  police officers of the Carolina Police Department, and **JOHN DOES #6-10**, individually and/or in their capacity as supervisors of the Carolina Police Department, the identity and number of whom is presently unknown; **DEF INSURANCE COMPANY**, said name being an unknown and fictitious names of the insurance entities for the Municipality of Carolina and/or its police department

*Defendants.*

## COMPLAINT AND JURY DEMAND

--------------------------------------------------------------------------------------------------------------------------------------

## INTRODUCTION

1.      This action arises from shameful, vicious, and cruel acts of police brutality, and a

conspiracy to cover it up.  It seeks compensation for the unconstitutional and tortuous conduct of

police officers of the Carolina Municipal Police Department ("CMPD") who singled out Yonatta Crispin ("Crispin" or "plaintiff"), a decorated, respected non commissioned officer of the United States Marine Corps, because he was wearing a baseball cap bearing an insignia of the Dominican Republic's flag, forcibly removed him from a baseball game and beat him to the point of requiring medical treatment and arrested him. Then, as part of an effort to further intimidate Mr. Crispin and cover-up their crimes, the CMPD officers filed a Complaint, charging Mr. Crispin with multiple aggravated assaults, which have been dismissed, as well as another equally infirm complaint, which as of this date remains pending.

      2.    Mr. Crispin now brings an action against these CMPD officers and/or CMPD supervisors, as well as certain officers of the Commonwealth of Puerto Rico Police Department, ("PRPD"), who either participated and/or were witnesses or were otherwise aware of these events, yet failed to report what they knew, and instead, in numerous instances, engaged in a deliberate cover-up, obstructing justice and preventing the truth from surfacing.

      3.    Mr. Crispin also seeks redress against the Municipality of Carolina ("the Municipality"), as well as the CMPD, the PRPD and a fraternal police organization associated with the CMPD, whose name is presently unknown ("ABC") for customs, policies, and practices that permitted, condoned and preserved a "code of silence" environment in which the most violent police officers believed they would be insulated from swift and effective investigation, prosecution, and conviction for brazen acts of brutality. The injuries inflicted upon Mr. Crispin are the result of the unconstitutional malice and indifference of these defendants.

      4.    The pattern of police brutality and harassment constituting Mr. Crispin's travails began on February 4, 2007, when he was seated in the stadium in Carolina attending a baseball game

between the Dominican National team and the Puerto Rico team.    During the game, another spectator at the stadium, identified as "Oscar," began celebrating with the Dominican Republic flag, by walking up and down the stadium steps and aisles with the  flag in hand and loudly cheering his team on.  His antics attracted the attention of CMPD personnel who, on information and belief, were in charge of the security at the stadium.

5.    Crispin, wearing a cap with the insignia of the Dominican Republic flag, and without any connection to Oscar and the flag-waving, was nevertheless approached by the police, violently grabbed and forcibly removed from the stadium.

6.    Crispin was then struck in the head with retractable metal baton by defendant CMPD Officer, Lt. John Cruz Gonzalez, followed by numerous policemen who also began kicking and striking plaintiff with their batons and other devices. After being beaten and kicked, Crispin was handcuffed and detained at the stadium detention center.  At no time was he advised as to his constitutional rights upon arrest.  Further, and although profusely bleeding, medical attention was denied to plaintiff Crispin at the stadium detention center.  About 3AM fellow U.S. Marine personnel arrive and then after their arrival, Crispin was finally transported to the UPR Hospital, in Carolina, Puerto Rico.  At the UPR hospital, Crispin was attended to, received stitches in his head, and was released a few hours later.

7.    In addition to the above, an attempt was made to cover-up and dispose of evidence pertaining to this vicious and cruel attack, which was maintained in video surveillance cameras owned and or operated by the stadium and its officials, by various of the defendants who either confiscated, obliterated or otherwise destroyed and/or removed any and all recordings captured by said surveillance, so as to prohibit the distribution of same to any interested and/or

investigative party.

8.      Subsequent to this brutal attack, on or about March 27, 2007, CMPD officers Lieutenant John Cruz Gonzalez, Sergeant Luis Diaz Ruiz, and Officer Karimar Peraza Salgado charged Crispin, *in absentia*, with three felony charges of aggravated assault and destruction of property.  They did so in disregard of the proper charging process which requires that an individual be given an opportunity to appear prior to the institution of such formal charges.  All felony charges were, however, dismissed on September 17, 2007.  A misdemeanor charge, equally infirm, remains outstanding to this date.

9.      Subsequent to the filing of such charges, the Plaintiff was again arrested on March 28, at his place of employment.  There in front of fellow officers and personnel he was handcuffed and taken to the precinct where he was then processed for the unjustified charges..

## JURISDICTION

10.     This action is brought pursuant to 42 U.S.C. §§1983, 1985, and 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and the laws of the Commonwealth of Puerto Rico.  Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 (1-4) and 2202.  Jurisdiction to adjudicate supplemental commonwealth claims is provided by 28 U.S.C. §1367.

11.     Venue is proper in this district under 28 U.S.C. §1391(b).

## THE PARTIES

*Plaintiffs*

12.     Yonatta Crispin is a 30 year old, naturalized United States citizen, born in the Dominican Republic on March 20, 1977.  Since June 20, 2000, he has been in the United States

Marine Corps. Since July 27, 2004 he has been stationed at Roosevelt Road Naval Station, Ceiba, Puerto Rico where he acts as marine instructor for the reservists.

*Defendants*

13.     The Municipality is a legal entity constituted as an autonomous political subdivision in the Commonwealth of Puerto Rico, (the "Commonwealth") with full legal capacity to sue and be sued, the powers for which are set forth in the Puerto Rico Autonomous Municipalities Act ("Ley de Municipios Autonomos de Puerto Rico"), Act 81 of August 30, 1991, 21 LPRA §4001 *et seq*., and said municipality  is the public employer of certain of  the police officers named as defendants in this action.

14.     ABC Police Association, the identity of which is presently unknown, is either a union, fraternal  or other representative organization concerning, and/or for the benefit of, police officers.

15.     DEF Insurance Company, whose actual identity is presently unknown, issued an insurance policy covering damages caused to plaintiff by defendants.

16.     The following defendants are sued in their individual and official capacities, as having acted within the scope of their employment and under color of law:

(A) Defendant José Carlos Aponte Dalmau, at all relevant times, was and/or is the Mayor of the Municipality of Carolina, Puerto Rico;

(B) Colonel  Carlos  Haddock  at  all  relevant  times  the  Commissioner  of  the CMPD;

(C ) Lieutenant John Cruz Gonzalez ("Gonzalez"), Badge # 4-029, at all relevant times, was and/or is, a CMPD officer;

(D) Sergeant Luis Diaz Ruiz ("Ruiz"), Badge #4-395, at all relevant times, was and/or is CMPD officer;

(E) Officer Karimar Peraza Salgado ("Salgado"), Badge # 119, at all relevant times, was and/or is a CMPD officer;

(F) Officer Vanessa Carmona ("Carmona"), Badge Number 30879, at all relevant times, was and/or is a PRPD officer and is the individual who presented charges against Crispin on behalf of the CMPD Officers;

(G) Officer Alfredo Rivera Suarez ("Rivera"), Badge Number 21912, at all relevant times, was and/or is a PRPD officer and is the individual who interviewed plaintiff Crispin and thereafter covered up the shameful actions of the CMPD Officers involved;

(H) John Does 1-5 are police officers and/or non-uniformed employees of the CMPD, the identity and number of whom are presently unknown; and

( I ) John Does 6-10 are supervisory personnel in the CPD, the identity and number of whom are presently unknown.

## NOTICE OF CLAIM

17. Plaintiffs timely filed a notice of claim against the Municipality of Carolina through its mayor in compliance with the laws and regulations of the Commonwealth of Puerto Rico.

18. This action is commenced within the time required by law.

## FACTUAL AND GENERAL ALLEGATIONS

*February 4, 2007Arrest and Beating*

19. On February 4, 2007, when he was seated in the Stadium in Carolina attending a

baseball game between the Dominican National team and the Puerto Rico team.   During the game, another spectator at the stadium, identified as "Oscar," began celebrating by shouting and walking with a large flag of the Dominican Republic up and down the aisles of the stadium,  His antics attracted the attention of Carolina police personnel who, on information and belief, were in charge of the security at the stadium and the police moved in to eject this individual from the stands.

20. Crispin, wearing a cap with the insignia of the Dominican Republic flag, was also approached by the police, violently grabbed, pushed and forcibly removed from the stadium.

21. Crispin was then struck in the head with retractable metal baton by CMPD Officer, Lieutenant John Cruz Gonzalez.  Lt. Cruz-Gonzalez was then followed by numerous police officers who also began to kick and strike the plaintiff with their batons. After being kicked and beaten, Crispin was handcuffed and detained at the stadium detention center, without the benefit of the advisement of his constitutional rights.  Additionally and although Crispin was bleeding profusely, he was denied medical attention while detained at the center.  About 3 a.m. the following morning, U.S. Marine personnel arrived, at which time he was then transported to the UPR Hospital, in Carolina, Puerto Rico.  At the  UPR hospital, Crispin was attended to, and among other treatment, stitches were applied to his head and he was released a few hours later.

*Wrongful Filing of a Criminal Complaint*

22.  On or about March 27, 2007,  CMPD officers, Lt.  John Cruz Gonzalez, Sergeant Luis Diaz Ruiz, and Officer Karimar Peraza Salgado charged Crispin, with three felony charges of aggravated assault and destruction of property. By so charging Crispin *in absentia,* these officers acted in violation of Crispin's due process rights which affords such a person an opportunity to appear prior to the institution of the charges for the purpose of ascertaining probable cause for such

charges. The CMPD officers were assisted in the presentment of these charges by PRPD defendants

Vanessa Carmona, Badge Number 30879 and Alfredo Rivera Suarez, Badge Number 21912 **.**All

felony charges were, however, dismissed on September 17, 2007.  A misdemeanor charge remains

outstanding to this date.

*The Cover-Up*

23.    Under the oath of office and the written rules and regulations promulgated by the

CMPD, and the PRPD officers and supervisory personnel have an affirmative duty to intercede and

prevent crimes and other misconduct committed by officers and to report such conduct whenever

they become aware of it.  Defendants, including the John Does, were aware of the violent beating,

but nevertheless failed to report the activities surrounding said beating promptly and failed to protect

Mr. Crispin.

24.    Further an attempt was made to cover-up and dispose of  evidence pertaining to this

vicious and cruel attack, which was maintained in video surveillance cameras owned and or operated

by the stadium and its officials.  Defendants, including John Does, either confiscated, obliterated or

otherwise destroyed and/or removed any and all recordings captured by said surveillance, so as to

prohibit the distribution of  same to any interested and/or investigative party.

25.    Despite the aforementioned obligations and duties, it is the unspoken and informally

recognized policy or custom of the Municipality, the CMPD, the ABC Police Association and/or

individual CMPD police officers and other personnel, to systematically harass, coerce, intimidate,

and discriminate against Dominicans within their jurisdiction due to their national race and/or origin.

 It is in furtherance of this policy or custom that the CMPD officers and the other defendant

personnel committed the wrongful violence, and engaged in the conspiracy of cover-up and

8

indifference, against Mr. Crispin.

26.   The actions of all individual defendants were performed within the scope of their employment and authority, for whose acts the Municipality is further liable under the doctrine of *respondeat superior*.

27.   The actions of the defendant officers violated Mr. Crispin's rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the Constitution and were a direct and proximate cause of the physical and psychological injuries he suffered.

*Damages*

28.   As a direct and proximate result of defendants' conduct, Mr. Crispin suffered the following injuries and damages:

(A)   Violation of his rights under the First, Fourth, Fifth, Eighth and Fourteen Amendments to the Constitution;

(B) Loss of physical liberty;

(C) Life threatening physical injuries, pain and suffering, requiring the expenditure of significant sums in treatment expected to last the rest of his life;

(D) Extreme fear, emotional trauma and mental distress, requiring treatment;

(E)  Economic damages; and

(F)  Humiliation, embarrassment, and injury to reputation.

**CAUSES OF ACTIONS**

**Count I**

9

*42 U.S.C. §1983 Conspiracy*

29.  Plaintiff repeats all prior paragraphs.

30.  Defendants, under color of law, conspired with one another to deprive Mr. Crispin of his constitutional rights, including the right: to associate and speak freely; to have access to the courts to seek redress, and to be free from false arrest, false imprisonment, excessive and unreasonable force and the delay and denial of medical attention.  It was part of the conspiracy that defendants Gonzalez, Ruiz and Salgado and others, repeatedly physically assaulted and otherwise violated Mr. Crispin's rights commencing on or about February 4, 2007 and continuing to the filing of this Complaint.

31. In furtherance of the conspiracy and in order to cover up the acts of brutality, defendants engaged in the following:

(A)  Repeated threats and intimidation of Mr. Crispin;

(B) Fabricating and contriving criminal charges lodged against Mr. Crispin;

(C) Although aware of the brutality, and required to report it immediately, nevertheless deliberately suppressing the truth;

(D)  Upon information and belief, submitting false police reports, statements, and testimony to support and corroborate the fabricated charges lodged against Mr. Crispin to insulate defendants Gonzalez, Ruiz and Salgado and others from administrative and criminal sanctions;

(E)  Upon information and belief, willful destruction of evidence;

(F)  Obstruction of justice;

(G) Denial of medical treatment;

10

(H) Upon information and belief, lying to authorities concerning the transportation of Mr. Crispin by police officers for medical treatment and other reasons; and

(I) Upon information and belief, meeting and telephoning one another in an effort to share information and present a united front with regard to any questioning about their conduct.

32. As a proximate and direct result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

**Count II**

*42 U.S.C. §1983 Conspiracy between Municipality and Police Association*

33. Plaintiff repeats all prior paragraphs.

34. Defendants, Gonzalez, Ruiz, Salgado and John Does under color of law, conspired with one another and with defendant ABC Police Association of the CMPD to deprive Mr. Crispin of his constitutional rights, including the right: to associate and speak freely; to have access to the courts to seek redress, and to be free from false arrest, false imprisonment, and the delay and denial of medical attention.

35. In furtherance of the conspiracy and in order to cover up the wrongful acts of threats and violence described above, defendants engaged in the following:

(A) Jointly devising a false, exculpatory versions of defendants' conduct of February 4, 2007 and any other conduct concerning the beatings, threats and intimidation of Crispin for recounting to investigating authorities;

(B) Using ABC Police Association resources to orchestrate a cover-up;

11

(C) Refusing to come forward with evidence and information that would incriminate the individuals involved, in violation of the individual defendant police officers' sworn duty;

(D) Upon information and belief, discouraging witnesses from speaking truthfully to investigators and intimidating and defaming individuals who answered investigators' questions;

(E) Upon information and belief, submitting false police reports, statements, and testimony to support and corroborate the fabricated charges lodged against Mr. Crispin to insulate Gonzalez, Ruiz and Salgado from administrative and criminal sanctions;

(F) Upon information and belief, lying to authorities concerning the transportation of Mr. Crispin for medical treatment and other reasons; and

(G) Meeting and telephoning one another in an effort to share information and present a united front with regard to any questioning about their conduct.

36. As a proximate and direct result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count III

*42 U.S.C. §1983 Conspiracy Among Municipality, CMPD and the ABC Police Association*

37. Plaintiff repeats all prior paragraphs.

38. Acting jointly over a period of years, the Municipality, CMPD and ABC Police Association together established policies and customs that created a climate in which officers

believed they could use excessive force with impunity.

39. By virtue of the above-stated conduct, the conspiracy between the Municipality, CMPD and ABC Police Association is a proximate cause of plaintiff's injuries.

**Count IV**

*42 U.S.C. §1983  Monell Claim*

40.   Plaintiff repeats all prior paragraphs.

41.   Prior to February 2007, the Municipality developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens; causing violations of Mr. Crispin's rights.

42.   These policies and/or customs included:

   (A) The failure to properly investigate police misconduct;

   (B) The failure to report police misconduct;

   (C) The toleration of police brutality; and

   (D) The failure to identify and discipline offending police officers and other

   personnel.

43.   The Municipality has been on notice for years that its employees were engaged in the systematic harassment, coercion, intimidation, and discrimination against Dominicans within their jurisdiction due to the national race and/or origin of these individuals, and has tolerated this conduct without sanction, thereby failing to discourage constitutional violations on the part of its police officers.

44. It was the policy and/or custom of the Municipality to investigate inadequately and improperly civilian complaints of police misconduct and to punish inadequately those complaints

which were substantiated.  Instead, acts of brutality and discrimination were tolerated by the Municipality and the CMPD.

45.   It was the policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

46.   It was and is the policy of the Municipality to give police officers suspected of criminally assaulting a civilian biased treatment.

47.   Police officers and other personnel of the Municipality have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence."  This "code of silence" is a custom so deeply ingrained in the CMPD that it effectively constitutes a policy of the Municipality.

48.   The Municipality has been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers.  The Municipality has failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other CMPD officers and Municipality personnel, thereby causing and encouraging CMPD officers, including the individual defendants in this case, to violate the rights of citizens such as Mr. Crispin.

49.   The Municipality was on notice about this problem for years, but it is believed the Municipality has maintained no system, or an inadequate system, of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers.  This failure to

14

identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes CMPD officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene nor give evidence against them.  These systemic deficiencies include, but are not limited to:

(A) Failure to thoroughly investigate alleged acts misconduct by CMPD officers;

(B)  Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

(C)  Preparation of investigative reports which uncritically rely solely on the word of police officers and which systematically fail to credit testimony of non-police witnesses;

(D)  Preparation of investigative reports which omit or ignore factual information and physical evidence which contradict the accounts of police officers;

(E)  Issuance of public statements exonerating officers involved in such incidents prior to the completion of investigation;

(F)  Failure to have meaningful review of investigative reports by responsible superior officers for accuracy or completeness, including consideration of the conduct of officers who were not actively engaged in

the misconduct which was the subject of the investigation, and acceptance

of conclusions which are not supported by the evidence or which contradict

such evidence; and

(G) Failure to identify potential "code of silence" violations and maintain

accurate records of allegations of such misconduct.

50.  The Municipality, prior to and at the time of this incident, were aware of the

need for more or different training, rules, regulations, investigations, and discipline

relating to police officers who practice the "code of silence," and was deliberately

indifferent to the need.

51.  The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the

danger of harm to citizens such as plaintiff and the need for more or different training and discipline

are policies, practices and customs of the Municipality has caused police officers, including the

officer defendants in this case, to believe that they can violate the rights of citizens with impunity,

and that their fellow officers would conceal such conduct, including swearing falsely and

committing perjury, all with the foreseeable result that officers will violate the constitutional rights

of citizens.

52.  As a proximate result of the Municipality's policies and its deliberate indifference,

defendants violated Mr. Crispin's constitutional rights for which he suffered substantial damages.

## Count V

*42 U.S.C. §1983 - Systemic Claim Against the Municipality, the CPD
and the ABC Police Association*

53.  Plaintiff repeats all prior paragraphs.

54. Prior to February 2007, the Municipality and the CMPD, acting at the behest of and/or in

16

close conjunction with the ABC Police Association, developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of its citizens, which caused violations of Mr. Crispin's rights.

55. The Municipality, CMPD and ABC Police Association have been on notice for years that their employees were engaged in the systematic harassment, coercion, intimidation, and discrimination against Dominicans within their jurisdiction due to the national race and/or origin of these individuals, and have tolerated this conduct without sanction, thereby failing to discourage constitutional violations on the part of their employees.

56. It was the policy and/or custom of the Municipality and the CMPD to investigate inadequately and improperly civilian complaints of police misconduct and to punish inadequately those complaints which were substantiated. Instead, acts of brutality were tolerated by the Municipality and the CMPD.

57. It was the policy and/or custom to supervise and discipline officers inadequately, including the defendant officers, thereby failing to discourage constitutional violations on the part of its police officers.

58. It was and is the policy of the Municipality and the CMPD to give police officers suspected of criminally assaulting a civilian biased treatment.

59. Police officers of the CMPD have for years engaged in a pattern and practice of actively and passively covering up the misconduct of fellow officers by failing to come forward or failing to accurately give evidence as to misconduct of which they are aware, thereby establishing and perpetuating a "code of silence." This "code of silence" is a custom so deeply ingrained in the CMPD that it effectively constitutes a policy of the Municipality.

60. The Municipality and the CMPD have been deliberately indifferent to the need for more or different training, rules and regulations relating to police officers who witness or have information regarding misconduct by fellow officers.  The Municipality and the CMPD have failed to properly sanction or discipline officers who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of citizens by other CMPD officers, thereby causing and encouraging CMPD officers, including the individual defendant officers in this case, to violate the rights of citizens such as Mr. Crispin.

61. The Municipality and the CMPD were on notice about this problem for years, but it is believed the Municipality and the CMPD have maintained no system, or an inadequate system, of review of officers who withhold knowledge or give false information regarding misconduct by fellow officers.  This failure to identify and track such officers, including the defendant officers, or to discipline, more closely supervise, or retrain such officers who engage in the "code of silence," causes CMPD officers to believe that they can engage in misconduct, secure in the knowledge that their fellow officers will neither intervene nor give evidence against them.   These systemic deficiencies include, but are not limited to:

(A) Failure to thoroughly investigate alleged acts misconduct by CMPD officers;

(B) Preparation of investigative reports designed to vindicate the conduct of officers who gave false information about the misconduct of other officers, or who falsely denied knowledge about misconduct which they were in a position to observe;

( C) Preparation of investigative reports which uncritically rely solely on

the word of police officers and which systematically fail to credit testimony

of non-police witnesses;

(D) Preparation of investigative reports which omit or ignore factual

information and physical evidence which contradict the accounts of police

officers;

(E) Issuance of public statements exonerating officers involved in such

incidents prior to the completion of investigation;

(F) Failure to have meaningful review of investigative reports by

responsible superior officers for accuracy or completeness, including

consideration of the conduct of officers who were not actively engaged in

the misconduct which was the subject of the investigation, and acceptance

of conclusions which are not supported by the evidence or which contradict

such evidence; and

(G) Failure to identify potential "code of silence" violations and maintain

accurate records of allegations of such misconduct.

62.  The Municipality and the CMPD, prior to and at the time of this incident, were aware of

the need for more or different training, rules, regulations, investigations, and discipline relating to

police officers who practice the "code of silence," and was deliberately indifferent to the need.

63. The foregoing acts, omissions, systemic deficiencies and deliberate indifference to the

danger of harm to citizens such as plaintiff and the need for more or different training and discipline

are policies, practices and customs of the Municipality and the CMPD and have caused police

officers, including the officer defendants in this case, to believe that they can violate the rights of

citizens with impunity, and that their fellow officers would conceal such conduct, including swearing falsely and committing perjury, all with the foreseeable result that officers will violate the constitutional rights of citizens.

64. The culture of silence and dishonesty concerning police misconduct exists because of, rather than despite, the existence of the Municipality, CMPD and/or the ABC Police Association.

65. As a proximate result of the Municipality's, CMPD's and the ABC Police Association's policies and its deliberate indifference, defendants violated Mr. Crispin's constitutional rights for which he suffered substantial damages.

**Count VI**

*42 U.S.C. §1985(3) - Conspiracy with Racial Animus*

66. Plaintiff repeats all prior paragraphs.

67. The individual defendants, under color of law, conspired with each other, and with the ABC Police Association, to undertake a course of conduct to injure, oppress, threaten, and intimidate Mr. Crispin in the free exercise and enjoyment of the rights and privileges and equal protection of law secured to him by Constitution.

68. Defendants were engaged in systematic harassment, coercion, intimidation, and discrimination against Dominicans within their jurisdiction due to the national race and/or origin of these individuals.  The conduct of defendants was motivated by racial animus and by their desire to injure, oppress, threaten, and intimidate Yonatta Crispin because of his Dominican ancestry.

69. Defendants ethic animus was expressed in ethnically insulting remarks directed at Mr. Crispin.

70. It was apart of the conspiracy that CMPD defendant officers Gonzalez, Ruiz and Salgado

20

did, among other acts, physically assault Mr. Crispin while he was helpless and in their custody and control.

71.. In furtherance of the conspiracy, and to conceal the crimes and misconduct of CMPD defendant officers Gonzalez, Ruiz and Salgado, the other defendants, engaged in a cover up.

72.  The ABC Police Association through its agents, was a willful participant in conjunction with officers acting under color of law.

73. As a proximate and direct result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

### Count VII

*42 U.S.C. §1985(3) - Conspiracy to Deny Equal Protection*

74. Plaintiff repeats all prior paragraphs.

75. The individual defendants, under color of law, conspired with each other, and the ABC Police Association, for the purpose of hindering and preventing the constituted authorities of the Commonwealth of Puerto Rico from providing to Mr. Crispin equal protection of the laws.

76. In furtherance of the conspiracy and to conceal the crimes and misconduct of defendant Gonzalez, Ruiz and Salgado, all the defendants engaged in a cover-up.

77. Among the actions taken in furtherance of the cover-up were, upon information and belief:

(A) Jointly devising a false, exculpatory versions of defendants' conduct of February 4, 2007 and any other conduct concerning the beatings, threats and intimidation of Crispin for recounting to investigating authorities;

(B) Using ABC Police Association resources to orchestrate a cover-up;

(C) Refusing to come forward with evidence and information that would incriminate the individuals involved, in violation of the individual defendant police officers' sworn duty;

(D) Upon information and belief, discouraging witnesses from speaking truthfully to investigators and intimidating and defaming individuals who answered investigators' questions;

(E) Upon information and belief, submitting false police reports, statements, and testimony to support and corroborate the fabricated charges lodged against Mr. Crispin to insulate Gonzalez, Ruiz and Salgado from administrative and criminal sanctions;

(F) Upon information and belief, lying to authorities concerning the transportation of Mr. Crispin by police officers for medical treatment and other reasons; and

(G) Meeting and telephoning one another in an effort to share information and present a united front with regard to any questioning about their conduct;

(H) Issuing false statements to internal affairs investigators;

(I) Failing to report incriminating evidence to proper authorities;

(J) Attempts to intimidate and defame those who did report to Internal Affairs;

(K) Falsely lodging complaints against Mr. Crispin; and

(L) Directly and indirectly discouraging Mr. Crispin and others from

testifying.

78. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count VIII

*42 U.S.C. §1985(2) - Conspiracy to Impede Due Course of Justice*

79. Plaintiff repeats all prior paragraphs.

80. Each of the individual defendants conspired, together with the ABC Police Association, to impede the due course of justice in the Commonwealth of Puerto Rico, with the intent of denying to Mr. Crispin, the equal protection of law.

81. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages describe above.

## Count IX

*42 U.S.C. §1983 - Unreasonable and Excessive Force -- February 2007*

82. Plaintiff repeats all prior paragraphs.

83. By their conduct, on or about February 4, 2007, defendants Gonzalez, Ruiz and Salgado, and John Does, under color of law, deprived Mr. Crispin, of his constitutional right to be free from excessive and unreasonable force.

84. Mr.  Crispin claims damages for the injuries set forth above.

*42 U.S.C. §1983 - False Arrest and Imprisonment -- February 2007*

85. Plaintiff repeats all prior paragraphs.

86. By their conduct, on or about February 4, 2007, defendant CPD officers Gonzalez, Ruiz and Salgado, and John Does, under color of law, deprived Mr. Crispin, of his constitutional right to

be free from false arrest and false imprisonment.

87. Mr. Crispin claims damages for the injuries set forth above.

## Count X

*42 U.S.C. §1983 - Delay and Denial of Medical Treatment and Failure to Protect While in Custody -- February 2007*

88. Plaintiff repeats all prior paragraphs.

89. By their conduct, on or about February 4 and 5, December 11, 2007, defendants Gonzalez, Ruiz and Salgado and John Does, acted with malicious or, at minimum, deliberate indifference, in failing to protect Mr. Crispin from violence while in police custody and while otherwise interacting with police, and in failing to secure the medical attention required for his serious injuries, in a manner that deprived him of his constitutional rights and perpetuated and exacerbated his physical and mental pain and suffering.

## Count XI

*42 U.S.C. §1983 - Failure to Intercede*

90. Plaintiff repeats all prior paragraphs.

91. By their conduct, upon information and belief, defendants had opportunities to intercede on behalf of Mr. Crispin to prevent the excessive use of force and threats.

92. Due to their intentional conduct or deliberate indifference, each defendant declined or refused to so intervene.

93. As a direct and proximate result, Mr. Crispin suffered the injuries and damages described above.

## Count XII

*42 U.S.C. §1983 - First and Fourteenth Amendment Violations*

94.  Plaintiff repeats all prior paragraphs.

95.  By their conduct, and under color of law, all individual and John Doe officers, and the ABC Police Association deprived Mr. Crispin of his First and Fourteenth Amendment rights to have access to the courts to seek redress.

96.  Defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against Mr. Crispin.

97.  Defendants efforts to conceal the truth continue to the detriment of Mr. Crispin.

98. As a direct and proximate result, Mr. Crispin suffered the injuries and damages described above.

## Count XIII

*42 U.S.C. §1986 - Action for Neglect to Prevent*

99.  Plaintiff repeats all prior paragraphs.

100. Upon information and belief, despite having knowledge that a 42 U. S. C. §1985(3) conspiracy was beginning or ongoing, defendants neglected or refused to intervene, report or otherwise reasonably act in a manner calculated to prevent or end the conspiracy.

101. With reasonable diligence, defendants could have a promptly reported the brutality to superiors and to duly authorized investigators.  Their failure contributed to Mr. Crispin's suffering gratuitously before medical care was obtained for him and for his arrest, his beatings, and the delay and withholding of medical treatment, thereby exacerbating his pain and suffering.

102. Had the defendants complied with the law and furnished truthful information to authorities, the §1985(3) conspiracy would not have succeeded to the extent that it did and continues to succeed.

103. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count XIV

*42 U.S.C. §1983 - Supervisor Liability*

104. Plaintiff repeats all prior paragraphs.

105. Defendants John Does 6-10 were supervisory personnel at the CMPD with oversight responsibility for line officers Gonzalez, Ruiz and Salgado.  They were responsible for the training, instruction, supervision, and discipline of three officers and John Does who brutalized Mr. Crispin.

106. Upon information and belief, these defendants received complaints about the conduct of Gonzalez, Ruiz and Salgado and other officers in the CMPD.  They knew about past complaints, unacceptable behavior, and disciplinary infractions, or in the exercise of due diligence, should have known about such conduct.

107. These defendants knew, or in the exercise of due diligence should have known, that the conduct of Gonzalez, Ruiz and Salgado against Mr. Crispin was likely to occur.

108. These defendants failed to take preventative and remedial measures to guard against the brutality and cover-up committed by Gonzalez, Ruiz and Salgado against Mr. Crispin. Had they taken appropriate action, Mr. Crispin would not have been injured.

109. For example, upon information and belief, the police department received a number of complaints concerning the excessive use of force on civilians, and particularly those of Dominican descent.  No action was taken to investigate, authenticate and address these complaints.

110. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## COUNT XV

*Supplementary Claim of Gross Negligence or Negligence*

111. Plaintiff repeats all prior paragraphs.

112. Defendants have been grossly negligent or negligent in the supervision, training, and monitoring of their representatives who consult with and counsel police officers who are suspected of crimes and misconduct, and police officers who are witnesses to crimes and misconduct by their fellow officers.

113. By virtue of the unique public safety considerations implicated by police violence, its pivotal role in the official investigations of police misconduct, the ABC Police Association has a duty to assure that police officers do not violate their duties to report crimes and misconduct by fellow officers.

114. The ABC Police Association and John Does 6-10 have been grossly negligent and negligent in the instruction and training they provide to their members with respect to their responsibilities to report crimes or misconduct by other police officers.

115. The ABC Police Association and John Does 6-10 have been on notice for many years that their representatives have played a role in the improper obstruction of criminal investigation of San Juan municipal police officers.

116. The ABC Police Association and John Does 6-10 knew or should have known that their policies and practices have contributed to improper concealment of admissions by police officers to ABC Police Association representatives, and a "code of silence" being followed by the police officers, who are also ABC Police Association members, to cover up crimes and misconduct.

117. The ABC Police Association and John Does 6-10 knew or should have known that their

polices and practices, as well as their grossly negligent and negligent supervision and training of ABC Police Association representatives, created an atmosphere where the most violent police officers felt assured that their brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

118. This mistreatment and torture of Mr. Crispin previously set forth and the subsequent cover up of those events, were reasonably foreseeable results of the negligent conduct of the ABC Police Association and John Does 6-10.

119. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count XVI

*Supplementary Claim of Assault and Battery -- February 2007*

120.  Plaintiff repeats all prior paragraphs.

121.  As set forth above, on or about February 4, 2007, defendants Gonzalez, Ruiz and/or Salgado committed atrocious acts of battery against Yonatta Crispin which included beating and kicking him about the face and body without cause.

122. The aforestated conduct of defendants Gonzalez, Ruiz and/or Salgado was committed while these defendants were acting in the scope of their employment, specifically in the course of arresting, detaining and/or transporting Mr. Crispin, for which the Municipality and the CMPD are liable.

123. As a result of these death threats and the excessive and unnecessary physical force used against him, Mr. Crispin suffered severe and serious physical and mental injuries as set forth above.

## Count XVII

28

*Supplementary Claims of False Arrest and Imprisonment -- February 2007*

124.  Plaintiff repeats all prior paragraphs.

125. On or about February 4, 2007, plaintiff was wrongfully, unlawfully, and unjustifiably charged, arrested, detained and deprived of his liberty against his will, and was imprisoned by defendants Gonzalez, Ruiz, Salgado and/or other unknown John Doe police officers and supervisory personnel.

126. At all relevant times, these defendants acted forcibly in apprehending and detaining Mr. Crispin.

127. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention and imprisonment was carried out without a warrant.

128.   After his arrest, Mr. Crispin was wrongfully harassed, threatened and beaten.

129. Throughout Mr. Crispin's false arrest and imprisonment, defendants Gonzalez, Ruiz and Salgado and/or other unknown John Doe police officers and supervisory personnel, did not permit him an opportunity to establish his innocence.

130.  At all times mentioned, the unlawful, wrongful, and false arrest and imprisonment of Mr.  Crispin was without right or probable cause, and was forcible and against his will.

131.   All of the foregoing occurred without any fault or provocation on the part of Mr. Crispin.

132. At all relevant times defendants Gonzalez, Ruiz and Salgado and/or other unknown John Doe police officers and supervisory personnel who were responsible for the false arrest and imprisonment of Mr. Crispin were employees of the Municipality and the CMPD, and were acting for, upon, and in furtherance of, the business of their employers and within the scope of their

employment.

133.  As a result of the false arrest and imprisonment, Mr. Crispin was subjected to humiliation, ridicule and disgrace.  He was required to incur bills for legal services rendered, and was otherwise injured and damaged.

### Count XVIII

*Supplementary Claim of Intentional or Negligent Infliction of Emotional Distress -- February 2007*

134.   Plaintiff repeats all prior paragraphs.

135.  Commencing on or about February 4, 2007, in the course of committing atrocious acts of battery against Yonatta Crispin which included beating and kicking him about the face and body without cause, as well as falsely arresting him and denying him proper medical care, defendants Gonzalez, Ruiz and Salgado embarked on a malicious, willful, and grossly negligent course of conduct intended to cause Mr. Crispin to suffer extreme mental and emotional distress, agony, and anxiety.

136.  One objective of this extreme and outrageous course of conduct was to inflict severe mental and emotional distress upon Mr. Crispin so as to intimidate, terrify, and dissuade him from exposing the vicious assault and torture inflicted upon him, the false arrest and imprisonment, and the unconscionable delay and denial of medical treatment Mr. Crispin endured.

137.  Defendants either knew or should have known that Mr. Crispin had been injured, that failure to get him to a hospital for immediate treatment would create an unreasonable risk of bodily harm, and that failure to obtain such treatment promptly would cause Mr. Crispin extreme mental pain and anguish.  Nonetheless, all of these defendants breached their duty to obtain medical treatment for Mr. Crispin.

138.  Defendants intentionally, recklessly or negligently caused Mr. Crispin to suffer mental and emotional distress by impeding and obstructing the exposure of the vicious battering and torture he suffered, the false arrest and imprisonment he endured, and the wanton delay and denial of medical treatment he experienced.

139.  The aforesaid acts of intentional, reckless and negligent infliction of emotional and mental distress by defendants constitute misconduct of en egregious nature that exceeds all bounds usually tolerated by a civilized society.

140.  As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count XIX

*Supplementary Claim of Prima Facie Tort -- December 2005*

141. Plaintiff repeats all prior paragraphs.

142. By their actions, as set forth above, on or about February 4, 2007, defendants inflicted harm upon Mr. Crispin without excuse or justification, out of disinterested malevolence.

143. As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

## Count XX

*Supplementary Claim of Negligence or Gross Negligence Against Police Officers*

144.  Plaintiff repeats all prior paragraphs.

145.  As Carolina police officers, defendants Gonzalez, Ruiz and Salgado and/or  the John Doe defendants, had a duty to care, protect and obtain medical treatment for Crispin while he was in their custody, under their control or otherwise observed by them to be in need of medical treatment.

31

146. These defendants knew or should have known about the severe injuries Mr. Crispin suffered and were grossly negligent in their failure to protect him from further injury by unconscionably delaying, hindering and/or preventing his medical treatment and/or transportation to a hospital.

147.  As a proximate result of defendants' conduct, Mr. Crispin suffered the injuries and damages described above.

### Count XXI

*Supplemental Claim--Respondeat Superior*

148.  Plaintiff repeats all prior paragraphs.

149.  At all relevant times, defendants who were  employees, agents or servants of the Municipality and/or the CMPD were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

150. Consequently, the Municipality and/or the CMPD are liable under the doctrine of *respondeat superior* for their tortious actions.

**WHEREFORE**, plaintiffs request the following relief, jointly and severally, as against all of the defendants:

a.      An award of compensatory damages in an amount to be determined at trial;

b.      An award of punitive damages in an amount to be determined at trial;

c.      An award of equitable relief against the Municipality of Carolina and/or the Police Department of the Municipality of Carolina, Puerto Rico, and/or the ABC Police Association, their employees and agents;

d.      An award reimbursing plaintiff for disbursements, costs and attorney's fees; and

e.      For such other and further relief as to the court may seem just and proper.

## DEMAND FOR JURY

Plaintiffs demand a trial by jury of all claims, as permitted by law.

Dated:          San Juan, Puerto Rico
                October 23, 2007

                                        **S/ Linda George_____**
                                        **LINDA GEORGE**
                                        **Attorney at Law for Plaintiff(s)**
                                        505 Main Street, Suite 214
                                        Hackensack, New Jersey   07601
                                        Tel:(201) 487-5225 Fax: 201-487-8807
                                        E-mail: **lgdefense@yahool.com**
                                        USDC  PR No.: 214813


                                        **S/ Emilio Solé De la Paz_____**
                                        **Attorney at Law for Plaintiff(s)**
                                        P.O. Box 12354
                                        San Juan, Puerto Rico 00914-0354
                                        Tel:(787) 722-7682 Fax: 787-721-0078
                                        E-mail: **soledelapaz@prw.net**
                                        USDC PR No.:  206204